**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CIVIL DIVISION**

SGIS, INC.

Plaintiff,

v.

KYLE STIVENDER, & STIVENDER SURVEYING, INC.

Defendants.

Case No.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, SGIS, Inc. ("SGIS"), by and through the undersigned counsel, sues Defendants KYLE STIVENDER ("Stivender") and STIVENDER SURVEYING, INC. ("SSI") (collectively the "Defendants") stating the following:

**INTRODUCTION/NATURE OF THE ACTION**

1. At bottom, this is a case about pure unethical and immoral greed. SGIS brings claims against the Defendants for theft of trade secrets and copyright infringement, as well as unfair trade practices, and a host of common law business torts including conversion, breach of fiduciary duty, breach of the duty of loyalty, unfair competition and tortious interference. In addition to these causes of action, because of his clear and blatant improper conduct, which was intended to cause the failure of SGIS, SGIS asks the Court to exercise its equitable powers and expel Stivender as a shareholder and to do so without compensation.[1] While this is an extreme remedy, the conduct discussed herein clearly warrants it.

[1] While Stivender is a 30% stockholder in SGIS, all his shares were gifted to him.

2. Defendant Stivender is a current shareholder of – and a former officer (President) and director of – SGIS and the purported "best friend" of SGIS's founder William Michael Pyle. On March 17, 2024, Mr. Pyle tragically drowned while saving his young son from the same peril, leaving behind his wife Katheryn Pyle ("Ms. Pyle") and two young boys. *See* https://www.midfloridanewspapers.com/highlands_news-sun/local-man-drowns-in-lake-lotela/article_5d659c32-e561-11ee-ba53-3ffb07b09b1e.html. After the tragic death, Mrs. Pyle became the majority shareholder in SGIS (70%) with Stivender holding the other 30%.

3. In the wake of the death of his "best friend" and business partner, rather than help SGIS maintain its business and overcome the tragedy, Stivender executed a deceitful and corrupt plan to steal the business *in toto*.

4. In June 2024, Ms. Pyle gave Mr. Stivender an opportunity to purchase her interest in SGIS for a reasonable price based upon an independent business appraisal. Mr. Stivender immediately rejected this offer and began to surreptitiously download SGIS's electronically stored business information ("ESI") from the company's cloud-based Egnyte server onto a portable hard drive.

5. In August 2024, Mr. Stivender made an incredibly low-ball offer to buy a majority interest in SGIS that was rejected. When this effort to capitalize on tragedy did not work, Stivender then formed his own competing company – SSI – on August 18, 2024. Mr. Stivender did not inform SGIS that he had created a direct competitor and continued to steal SGIS's ESI up through his resignation as President on November 8, 2024, and for several days thereafter. Upon information and belief, he also accessed and downloaded SGIS's financial information from QuickBooks Online. He used all this information to jump start the growth of his own new business and

simultaneously and improperly recruited away nearly all of SGIS's clients and employees, leaving SGIS crippled.

6. Based on forensic evidence, among the information he stole was all of SGI's historical CAD data. CAD data is the proprietary currency and lifeblood of a surveying company like SGIS. CAD data contains drawings and renderings of job sites which reflect all the essential work product performed by land surveyors. This includes both the company's proprietary design and layout formats as well as the specific measurements taken by its surveyors, often representing many hours of work performed. CAD files are specifically created for each job and each piece of land surveyed and are essential to completing work in the land surveying industry. A competing business could use an existing SGIS CAD file to essentially pick up where SGIS had left off on a job, capitalizing on the hours of leg work already performed pursuant to its customer orders. This provides a clear, unfair cost and time savings as compared to starting from scratch or from only publicly available information. While finished surveys are provided to customers and are often publicly available, CAD Data is not. Upon information and belief, Stivender stole nearly a decade's worth of CAD data.

7. He also stole SGIS's copyright protected survey template, copying it exactly all the way down to SGIS's unique tree symbols, fonts, line types, legend, and surveyor notes. He now uses that copyright protected template for surveys performed by SSI.

8. The Egnyte server he accessed to steal SGIS's confidential and proprietary information also included proprietary historical customer information, SGIS tax information, project tracking information, and a folder of pertinent information for every SGIS project dating back to 2016.

9. Over a period of four and a half months (June 26, 2024, to November 11, 2024), forensic records indicate that Stivender downloaded approximately 395,585 files from the SGIS Egnyte server. From November 8 through November 11, 2024, he continued to access the SGIS server and download proprietary information **after** he had resigned as an officer, director and employee of SGIS on November 8, 2024.

10. This is straight and plain stealing. Stivender's theft of SGIS's ESI violated, *inter alia*, the federal Defend Trade Secret Act (DTSA), Florida trade secret and copyright law, Florida civil theft law, common law conversion principals, and a host of fiduciary and other duties that Stivender owed to SGIS.

11. Stivender then used this ESI and other SGIS proprietary information and trade secrets to jumpstart his own business SSI by moving SGIS's customers to SSI and recruiting away SGIS employees after his misconduct had devastated SGIS's business.

12. Stivender's actions grossly and near fatally injured SGIS. They were a clear and blatant violation of the fiduciary and other common law legal obligations Stivender owed to SGIS as an officer and employee – and he took those actions while he was both, including while he was still serving as a director and President of SGIS.

13. Stivender's actions are inherently reprehensible and repugnant to the law. But to have taken them in the wake of Pyle's death and in a clear effort to injure SGIS, which was then run by Pyle's widow, is unconscionable. This lawsuit seeks to remedy all of Stivender's misconduct.

## PARTIES

14. SGIS, Inc. ("SGIS"), is a Florida corporation founded in 2016. It is a successful and long-standing land surveying company based in Sebring, Florida.

15. Stivender is a Florida citizen with a residence in Sebring, Florida.

16. SSI is a Florida corporation founded in August 2024 with a principal place of business in Sebring, Florida. Like SGIS, SSI is a land surveying company. Given its geographic location, SSI directly competes with SGIS. Stivender founded SSI while he was still an officer, director and employee of SGIS, and he continued to serve in all those roles at SGIS for nearly three months after he founded SSI.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 due to the questions of federal law involved in Count I. This Court may exercise supplemental jurisdiction over Plaintiff's additional state law claims pursuant to 28 U.S.C. 1367(b), as these claims arise out of the same case or controversy.

18. Stivender is a citizen of Florida and SSI is a Florida corporation with a principal place of business in Florida and both are, thus, subject to the jurisdiction of this Court.

19. Venue is proper under 28 U.S.C. 1391(b).

## FACTUAL BACKGROUND

20. SGIS, Inc. ("SGIS"), is a successful and long-standing land surveying company in Sebring, Florida. Its founder, Mr. Pyle personally invested all the resources needed to begin SGIS in 2016. Despite outlaying all the capital, Mr. Pyle made sure to include one of his closest childhood friends, Stivender, in the company. Mr. Pyle gifted Mr. Stivender shares in the company almost immediately and made him a director of SGIS.

21. In addition to making Mr. Stivender a shareholder and director, over time, Mr. Pyle gifted Mr. Stivender company shares until Mr. Stivender's interest in the company reached its present percentage of 30%. From the time of Mr. Pyle's tragic death until early November 2024,

Stivender was an officer (President), director, shareholder and employee of SGIS. He remained an officer, director and employee until he resigned on November 8, 2024. On the very day he resigned, Stivender downloaded and stole a substantial amount of ESI from SGIS. He stole more SGIS ESI in the days **after** he resigned.

22. Mr. Pyle grew his company over the years, establishing SGIS as a trusted and thriving business, with longstanding customer goodwill and with annual profits averaging close to half a million dollars per year.

23. Mr. Pyle tragically drowned on March 17, 2024, leaving behind two young sons and a grieving wife.

24. Following Mr. Pyle's death, Ms. Pyle assumed her late husband's role as majority shareholder of the company. Shockingly, Mr. Stivender soon attempted to undercut his childhood friend's now widowed wife. In April 2024, Ms. Pyle generously offered to gift Mr. Stivender additional shares that would bring his ownership percentage to 49%. This was not good enough for Mr. Stivender, who rejected the gift, commenting that he deserved to be the majority shareholder.

25. Ms. Pyle sought to accommodate Mr. Stivender's wishes by obtaining an independent business appraisal in June 2024 and giving Mr. Stivender the opportunity to purchase the totality of her interest for a reasonable price. Stivender immediately rejected this offer and countered with an unreasonable and ridiculously low price. For example, the offer was less than the total cash in the SGIS bank account, but Stivender wanted control of the full bank account as part of the proposed deal – in other words, he wanted to buy the shares for free.

26. After this low-ball offer was rejected, a third-party with other businesses in the surveying industry inquired about possibly purchasing SGIS and/or its assets. Stivender participated in the sale negotiations in his then role as President of SGIS.

27. As a part of the negotiations, Mr. Stivender, as President of SGIS, signed an NDA recognizing the risk of harm that would exist if the valuable confidential and proprietary information existing at SGIS was leaked or used by the buyer during the due diligence process. Additionally, the NDA recognized the harm that would exist if the buyer later tried to solicit the employees, agents, contractors, or contact of the company and therefore it specifically prohibited such contact. Ultimately, in mid-September, the third-party buyer made an offer that far exceeded Mr. Stivender's valuation of the company in his proposed buyout. The buyer also offered Stivender and Ms. Pyle continued employment with SGIS at or above their current salaries.[2]

28. Rather than, as an officer and director of SGIS, evaluate this offer in good faith and in the best interests of SGIS (not to mention the benefit of the family of his deceased "best friend"), Stivender took a course of action that benefited only his self-interest as he ramped up his efforts to purloin SGIS's business.

29. Ironically, Stivender himself engaged in the exact conduct – stealing SGIS confidential information and improperly soliciting SGIS clients and employees – that the very NDA he signed as company President prohibited the potential buyer from doing. In fact, at the time Stivender signed the NDA on behalf of SGIS on August 29, 2024, he had already been stealing SGIS's ESI for roughly two months and had incorporated his own competing entity (SSI) on August 19, 2024.

[2] Ultimately, in January 2025, hoping that the Company's good will still holds value and that, in conjunction with the success of this lawsuit, the business can be rebuilt, the third-party buyer purchased Ms. Pyle's shares in SGIS amounting to 70% of the company at a valuation price substantially below the value of the company that was offered in September 2024.

30. From at least June 26, 2024, Stivender used his access to SGIS's Egnyte server to download huge amounts of ESI that contained proprietary and confidential information of SGIS; the downloads from the Egnyte server are verified by forensic information. Upon information and belief, he did the same as to SGIS's financial information contained in QuickBooks Online. He did this on nearly a daily basis for several hours per day. In the end, it appears that he downloaded and stole what amounts to the entire contents of the SGIS Egnyte server, including all the Company's CAD data.

31. Despite his fiduciary role as an officer and director of SGIS, Stivender never disclosed the clear conflict of interest that existed after he started SSI and, consistent with this conflict of interest, his actions evidence a series of decisions made to benefit SSI and to detriment and injure SGIS.

32. Upon information and belief, Mr. Stivender used his access to confidential SGIS information such as payroll and benefits to solicit the employees of SGIS away from their employment while he was still an active shareholder in the company and functioning as an officer and director.

33. In September 2024, SGIS had seven (7) employees, two of which were Mrs. Pyle and Mr. Stivender. Today it only has one (1), Mrs. Pyle, and all work is being outsourced by necessity. Upon information and belief, at least four (4) former SGIS employees or field crew members now work for SSI.

34. Upon information and belief, SSI's customers consistent primarily of, if not exclusively of, former SGIS customers, many of which had active relationships with SGIS in the Fall of 2024. SSI has, among other things, completed jobs that were previously the business of SGIS. Said completion could not be achieved in a reasonable or efficient manner without the

proprietary CAD data that Stivender stole from SGIS. Publicly available information would not be sufficient to complete these jobs in an efficient manner.

35. In soliciting these customers and operating SSI, Stivender is improperly using SGIS confidential information and trade secrets, including but not limited to the ESI downloaded from SGIS to jumpstart his business. This includes, *inter alia*, using SGIS's proprietary survey layout, as well as customer history information compiled over years of service for clients. Additionally, because of his role at SGIS, Stivender was aware of, *inter alia*, knowledge of who SGIS's clients were, the rates the business was charging, wages paid to other employees, etc. And to the extent he was not aware, this and other proprietary information was in the ESI he stole.

36. Stivender has in effect stolen the business that he was unable to purchase via his lowball offer, using SGIS's confidential information to jump start the growth of his own business (SSI) without incurring typical costs and expenses required for doing so.

37. Several customers have informed Plaintiff that Stivender has approached them and tried to solicit their business.

38. The poaching and solicitation of SGIS's former clients and employees is not coincidental. Rather, it is the result of a concerted effort by Stivender to usurp a business which he had a fair opportunity to purchase himself but elected not to. Rather than buy the business he elected to try and improperly take it and thereby shortcut his own costs in developing a competing business.

39. SGIS has been severely harmed by Stivender's improper conduct. In the first nine (9) months of 2024, SGIS grossed $476,341.91, an average of $52,926.88 per month. In the last two months of 2024 – after Stivender executed his plan to steal the business and crater SGIS – the company sustained a loss totaling $-69,658.21, or an average of $-34,829.11 per month.

40. Simply, as a result of Defendant's unlawful actions, SGIS has seen its business crumble. Taken together, Defendants' unfair competitive practices, as described above, represent a campaign of unlawful and anticompetitive behavior targeted against the Plaintiffs for the purpose of undermining and usurping Plaintiffs' business.

**COUNT I**
**Violation of Defend Trade Secrets Act (18 U.S.C. § 1836 et seq.)**

41. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

42. Defendants have misappropriated SGIS's trade secrets, including but not limited to the following sensitive and confidential information: SGIS's CAD data dating back to 2014, customer history information, and SGIS's financial information.

43. Plaintiff keeps its customer history information, pricing information and CAD data confidential and secret to prevent exactly the scenario now presented to the Court: someone ascertaining the customer information, stealing the CAD data it developed in order to complete their jobs, and then soliciting those customers once Plaintiff has already done the necessary leg work of starting the surveying process and developing the CAD files for specific jobs.

44. The trade secrets in question were either used in, or related to use in, land surveying jobs involving substantial interstate and/or foreign commerce.

45. SGIS has taken reasonable measures to ensure that these trade secrets are kept secret and derive independent value from this information not being generally known to, and not being readily ascertained through proper means, by others who could obtain economic value from the use or disclosure of the information. These measures include password protected computers and server access, limiting employee access to certain information, and the requirement of an NDA during sale negotiations. The SGIS office is equipped with an alarm system.

46. Defendants knew or had reason to know that the knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret. His role at SGIS provided him such knowledge. Additionally, among other things, the Defendant, in his capacity as president of SGIS at the time, signed the NDA on behalf of SGIS during the sale negotiations that directly recognized the confidentiality of the information at issue.

47. Defendants, over a period of months, copied copious amount of confidential and proprietary ESI belonging to SGIS.

48. Each of the Defendants either:

a. used improper means to acquire knowledge of Plaintiff's Trade Secrets; or

b. at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was:

(i) derived from or through a person who had used improper means to acquire the trade secret;

(ii) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or

(iii) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret.

49. Defendants took these actions willfully, maliciously, and/or in reckless disregard for the rights of the Plaintiff, in that all Defendants knew, or had reason to know, that they had no right to use SGIS's customer list, proprietary CAD data, and other information without Plaintiff's consent and for the purpose of commercial competition with the Plaintiff.

50. Defendants took these actions willfully, maliciously, and/or in reckless disregard for the rights of the Plaintiff, in that all Defendants knew, or had reason to know, that they had no right to use SGIS's customer information, proprietary CAD data, and other information without Plaintiff's consent and for the purpose of commercial competition with the Plaintiff.

51. As a result of the Defendant's misappropriation of its trade secrets, SGIS has suffered and will continue to suffer actual damages, in an amount to be determined at trial.

52. As a result of Defendants' misappropriation of its trade secrets, SGIS has suffered and will continue to suffer irreparable harm if Defendants' misconduct is not enjoined.

53. Pursuant to 18 U.S.C. § 1836(b)(3)(C), SGIS is entitled to exemplary damages for Defendants' willful and malicious misappropriation of its trade secrets.

54. Pursuant to 18 U.S.C. § 1836(b)(3)(D), SGIS is entitled to recovery of its attorneys' fees because of Defendants' willful and malicious misappropriation of its trade secrets.

WHEREFORE, Plaintiff demands judgment against the Defendants:

a. enjoining the Defendants from use of SGIS's proprietary CAD data;

b. enjoining the Defendants from using SGIS's contacts to solicit business from or performing work for customers obtained in the manner described in this Complaint;

c. awarding Plaintiff money judgment in an amount to be determined at trial;

d. awarding exemplary damages;

e. awarding recovery of Plaintiff's attorney fees; and

f. awarding any other relief that this Court should deem fit.

**COUNT II**

**Violation of Florida Uniform Trade Secrets Act (Fla. Stat. §688.001 et seq.)**

55. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

56. Defendants knowingly, willfully, and maliciously misappropriated Plaintiff's Trade Secrets in the manner described in the preceding section.

57. SGIS took reasonable steps to protect the secrecy of the trade secrets, as described in the preceding section.

58. As a result of the knowing, willful, and malicious acts of the Defendant, SGIS has suffered and will continue to suffer actual damages.

WHEREFORE, Plaintiff demands judgment against the Defendants:

a. enjoining Defendants from use of SGIS's proprietary CAD data;
b. enjoining Defendants from using SGIS's contacts to solicit business from or performing work for customers obtained in the manner described in this Complaint;
c. awarding Plaintiff money judgment in an amount to be determined at trial;
d. awarding exemplary damages;
e. awarding recovery of Plaintiff's attorney fees; and
f. awarding any other relief that this Court should deem fit.

**<u>COUNT III</u>**
**Common Law Copyright Violation**

59. Plaintiff incorporates all previous paragraphs as if more fully set forth herein.

60. Certain of SGIS's CAD data, including CAD drawings, layout structure, and title block naming and layering conventions are copyright protected under Florida common law and belong to SGIS. Plaintiff is the owner of original drawings, designs, and layout templates created in the course of its business, rights to which are owned by Plaintiff and subject to copyright protection under Florida law.

61. Plaintiff has neither published nor licensed these designs and layout templates.

62. Upon information and belief, Defendants have made use and continue to make use of Plaintiff's copyrighted layout design in order to complete work on behalf of SSI.

WHEREFORE, Plaintiff demands judgment against the Defendants:

a. enjoining Defendants from continued unauthorized use of Plaintiff's copyright protected materials;

b. awarding Plaintiff money judgment in the form of either actual or statutory damages;

c. awarding recovery of Plaintiff's attorney fees; and

d. awarding any other relief that this Court should deem fit.

**COUNT IV**
**Breach of Fiduciary Duty (Defendant Stivender only)**

63. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

64. As an officer and director of SGIS, Stivender owed fiduciary duties to SGIS under both Florida statutory (Fla. Stat. §607.830(1)) and decisional law.

65. Mr. Stivender breached his duty by, *inter alia,* stealing the Company's ESI and using it to set up and run a competing business, setting up a competing business while serving as an officer and director of SGIS, soliciting employees of SGIS to work for his company and using SGIS confidential information to do so, and, upon information and belief, soliciting SGIS clients to move their business to SSI while he was still an officer and director of accessing SGIS's client information for use at his own land surveying business.

66. Of significance is that as of the date of filing this Complaint, Mr. Stivender's LinkedIn page as President and Owner of SSI reflects 500+ connections despite only being open since November of 2024, the majority of which are SGIS clients.

67. As a result of Mr. Stivender's breach of fiduciary duty, SGIS has suffered damages and will continue to suffer damages, to be determined at trial.

WHEREFORE, Plaintiff demands judgment against the Defendant Stivender:

a. awarding Plaintiff money judgment in the form of either actual or statutory damages;
b. requiring disgorgement to SGIS of all profits earned by SSI that arise from Stivender's breaches;
c. expulsion of Stivender as a shareholder of SGIS without compensation
d. awarding recovery of Plaintiff's attorney fees; and
e. awarding any other relief that this Court should deem fit.

**COUNT V**
**Breach of Duty of Loyalty (Defendant Stivender only)**

68. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

69. Defendant Stivender owed a duty of loyalty to SGIS as an employee thereof.

70. Stivender breached this duty through the conduct alleged herein, including but not limited to the conduct alleged in Count IV.

71. This disloyal conduct was carried out for the benefit of Stivender and SSSI.

72. As a result of Defendants' breaches of loyalty, SGIS has suffered damages and will continue to suffer damages, including lost business and irreparable damage to its reputation and client relationships.

WHEREFORE, Plaintiff demands judgment against the Defendants:

a. enjoining SSI and its agents from use of its proprietary CAD data;
b. enjoining SSI from using SGIS's contacts to solicit business from SGIS's

existing customers, and/or enjoining from performing work for customers obtained in the manner described in the Complaint;

c. awarding Plaintiff money judgment in an amount to be determined at trial, and

d. awarding any other relief to which Plaintiff is entitled.

**COUNT VI**
**Tortious Interference with Business Relationships**

73. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

74. Plaintiff has and has had business relationships with various clients.

75. Defendants are and have been aware that Plaintiff has advantageous business relationships with customers seeking land surveying services.

76. Defendants knowingly, and without justification, interfered with the Plaintiff's business relationships with various customers by diverting the clients' business from SGIS to SSI, including using confidential information and trade secrets to do so and doing so while Stivender was still an officer, director and employee of SGIS.

77. As a direct and proximate result of Defendants' tortious interference with Plaintiff's customer relationships, Plaintiff has suffered and will continue to suffer actual damages in the form of lost income, loss of lucrative business relationships, and reputational damage.

WHEREFORE, Plaintiff demands judgment against the Defendants:

a. awarding Plaintiff money judgment in an amount to be determined at trial, and

b. awarding any other relief to which Plaintiff is entitled.

**COUNT VII**
**Violation of Florida's Unfair and Deceptive Trade Practices Act (Fla. Stat. §501.201 et seq.)**

78. The stated purpose of the Florida Unfair and Deceptive Trade Practices Act ("UDTPA") is to protect both "the consuming public and **legitimate business enterprises** from

those who engage in unfair methods of competition, or unconscionable, deceptive or unfair practices in the conduct of any trade or commerce." Fla. Stat. §501.202(2) (emphasis added).

79. Through its considerable expenditures and energies, SGIS has developed protected confidential and proprietary information and trade secrets and has maintained and secured same, including but not limited to its CAD data, its customer history information, its pricing information and its employee salary information.

80. Through its considerable expenditures and energies, SGIS has developed client relationships and secured contracts to complete land surveying work.

81. Defendants have engaged in a pattern of unfair trade practices against SGIS based on the allegations contained herein, including but not limited to, theft of CAD data and other ESI, use of such data to improperly compete with SGIS, breaches of fiduciary duties and duty of loyalty by Stivender for the benefit of himself and SSI and to the detriment and injury of SGIS. They are also using a logo that is nearly identical to SGIS's logo and therefore confusing and misleading consumers of surveying services – as part of his theft of ESI, Stivender downloaded the e-version of the SGIS logo.

82. The above-described acts by Defendants constitute, *inter alia*, unlawful and unfair methods of competition, unconscionable acts or practices, and unfair acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. 501.201, *et seq*.). Customers were misled and harmed by this conduct, *inter alia*, because they were not made aware that Stivender/SSI was not doing all the work on their projects but rather was improperly utilizing Plaintiff's work product in efforts to complete the work. Upon information and belief, this resulted in clients paying above market rates for the work actually performed.

83. These acts have harmed consumers by causing former SGIS customers to believe

that Stivender/SSI was doing their jobs through its own efforts not improperly utilizing Plaintiff's efforts and work product. This is compounded by the use of a nearly identical logo.

84. As a result of Defendants' unfair trade practices, Plaintiff has suffered and will continue to suffer actual damages in the form of lost income, damage to existing customer relationships, and reputational damage.

WHEREFORE, Plaintiff demands judgment against the Defendants:

a. declaring that Defendants, by way of the above-described conduct, have engaged in unfair trade practices in violation of Florida Law;

b. enjoining Defendants from use of SGIS's proprietary CAD data;

c. enjoining Defendants from using SGIS's contacts to solicit business from SGIS's existing customers, and/or enjoining Defendants from performing work for customers obtained in the manner described in this Complaint;

d. awarding Plaintiff money judgment in an amount to be determined at trial;

e. awarding recovery of Plaintiff's attorney fees; and

f. awarding any other relief to which Plaintiff is entitled.

## COUNT VIII
## Unfair Competition

85. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

86. **Florida common law allows a Plaintiff to bring a cause of action for unfair** competition – such a claim is an "umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1325 (M.D. Fla. 2007) (citing *American Heritage Life Insurance Company v. Heritage Life Insurance Company*, 494 F.2d 3, 14 (5th Cir. 1974)); *Chassis Master Corp. v. Borrego*, 610 F. Supp. 473,

479 (S.D. Fla. 1985). Common law unfair competition claims can address, *inter alia*, any business conduct contrary to the ethical practice of commercial matters.

87. Defendants, direct competitors of Plaintiff that compete for the same shared pool of customers, have engaged in unfair competition against the Plaintiff in manners alleged herein including, but not limited to, the following:

a. using insider knowledge and information improperly acquired by Stivender to identify and actively seek out SGIS customers and employees;
b. using Plaintiff's trade secrets, including purloined CAD data, to improperly compare with Plaintiff, including finish work initiated by Plaintiff which it would otherwise be unable to complete in a time and manner acceptable to the customer;
c. imitating Plaintiff's logo; and
d. raiding Plaintiff's work force.

88. These actions have been taken knowingly, willfully, and maliciously in order to gain an advantage over the Plaintiff in a market in which it also competes and involve information that Plaintiff has developed through the use of time, labor and financial resources.

89. As a result of Defendants' unfair competitive practices, SGIS has suffered damages and will continue to suffer damages, including lost business and irreparable damage to its reputation and client relationships.

WHEREFORE, Plaintiff demands judgment against the Defendants:

a. enjoining Defendants from use of SGIS's CAD data;
b. enjoining Defendants from using SGIS's contacts to solicit business from existing SGIS customers, and/or enjoining them from performing work for customers obtained in the manner described in the Complaint;

c. awarding Plaintiff money judgment in an amount to be determined at trial; and

d. awarding any other relief to which Plaintiff is entitled.

## COUNT IX
## Common Law Conversion

90. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

91. Florida Courts recognize the common law tort of conversion. "Under Florida law, the elements of conversion are (1) an act of dominion wrongfully asserted; (2) over another's property; … (3) inconsistent with his ownership therein." *TracFone Wireless, Inc. v. Hernandez*, 196 F.Supp.3d 1289, 1299 (S.D. Fla. 2016); *see also In re Bentley*, 600 B.R. 115, 118 (Bankr. M.D. Fla. 2018) (enumerating elements of conversion").

92. Defendants' have wrongfully converted, *inter alia*, Plaintiff's trade secrets, copyright protected templates and forms, and valuable CAD data. In doing so, Defendants have irreversibly diminished the value of these assets by impugning the uniqueness of the services and materials that Plaintiff creates. Even were Defendants enjoined from continuing to use the stolen materials (as they ought to be), the value of these assets has been irreparably damaged.

WHEREFORE, Plaintiff demands judgment against the Defendants:

a. awarding Plaintiff money judgment in an amount to be determined at trial; and

b. awarding any other relief to which Plaintiff is entitled.

## COUNT X
## Civil Theft (Fla. Stat. Ann. § 772.11)

93. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

94. Florida Courts recognize a statutory claim for civil theft. "Under Florida law, a defendant commits civil theft when it (1) knowingly (2) obtained or used, or endeavored to obtain

or use, a plaintiff's property with (3) 'felonious intent' (4) either temporarily or permanently to (a) deprive the plaintiff of its right to or a benefit from the property or (b) appropriate the property to the defendant's own use or to the use of any person not entitled to the property." *Epoch International Partners, LLP v. Bigfoot Inc.*, 587 F.Supp.3d 1214, 1220-21 (S.D. Fla. 2022) (internal quotations omitted); *see also United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009) (enumerating the elements of civil theft).

95. As above, Defendants have maliciously and irreparably appropriated Plaintiff's proprietary business information – the very foundation of Plaintiff's enterprise – because it was needed to jump start his own new business. Mr. Stivender, in particular, stole this information from Plaintiff while pretending to represent Plaintiff's best interests in his position as President and continued to steal it after he resigned. Criminal intent is obvious on the facts stated herein.

WHEREFORE, Plaintiff demands judgment against the Defendants:

a. awarding Plaintiff money judgment in an amount to be determined at trial;
b. awarding Plaintiff statutory treble damages; and
c. awarding any other relief to which Plaintiff is entitled.

**COUNT XI**
**Request for Declaratory Relief: Request for Court Ordered Expulsion/Disassociation of Stivender from SGIS**

96. The Court has inherent power to grant and impose just and equitable relief to address wrongdoing brought before it. *See generally* Fla. Stat §§ 86.011, 86.111; *Guaranty Trust Co. v. York,* 326 U.S. 99, 104-05 (1945); Galllogly, *Equity's Constitutional Source*, Yale.L.J., Vol, 123, No. 5 (March 2023)

97. Despite taking clear and malicious acts, including stealing SGIS's confidential information and trade secrets and using such to improperly compete against SGIS, Stivender remains a 30% shareholder in SGIS.

98. Stivender received all his shares via gift.

99. To the extent SGIS is able to recover from Stivender's improper conduct, he would be entitled to the benefits that come with being a 30% owner of the Company. In fact, he would be entitled to share in the benefits of the success of this lawsuit if it is successful.

100. Permitting such in light of Stivender's conduct intended to injure and cripple SGIS is not only inequitable, but also unconscionable.

WHEREFORE, Plaintiff asks the Court to exercise its inherent powers and enter an Order expelling Stivender as a shareholder of SGIS and ordering his shares forfeited to the Company treasury without compensation.

Respectfully submitted,
/s/ Christine R. Sensenig
Christine R. Sensenig, Esquire
Florida Bar No.: 074276
Sensenig Law Firm, PA
1515 Ringling Blvd, Ste 230
Sarasota, FL 34236
P: (941) 953-2828
F: (941) 953-3018
Primary Email: csensenig@senseniglawfirm.com
Secondary Email: droginski@senseniglawfirm.com
*Counsel for Plaintiff, SGIS, Inc.*

Dated: February 5, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that on February 5, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which electronically serves all counsel of record named below with copies.

*/s/ Christine R. Sensenig*
Christine R. Sensenig